## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

KEITH F. BELL, Ph. D.,

          Plaintiff

vs.

TUALATIN HILLS SWIM CLUB, INC.

          Defendant.

Case No.: 3:17-CV-1821

**DEMAND FOR JURY TRIAL**

### PLAINTIFF KEITH F. BELL, Ph.D.'s COMPLAINT

Plaintiff Keith F. Bell, Ph.D., files this Complaint to recover damages arising from and to enjoin violations of Plaintiff's intellectual property rights by Defendant Tualatin Hills Swim Club, Inc., and alleges as follows:

### PARTIES

1.    Plaintiff Keith Bell, Ph.D. is a resident of Texas, with a primary business and residential address at 3101 Mistyglen Circle, Austin, Texas 78746.

2.    Defendant Tualatin Hills Swim Club, Inc. (hereinafter "THSC" or "Defendant") is a corporation organized under the laws of Oregon, with an address of 16055 SW Walker Road, Beaverton, OR  97006.

### JURISDICTION AND VENUE

3.    This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. § 101, *et seq*.

4.    This Court has subject matter jurisdiction over Plaintiff's claims arising under the Copyright Act pursuant to 28 U.S.C. § 1331 and § 1338(a).

5.    This Court has personal jurisdiction over Defendant because it has minimum contacts with the State of Oregon, being a corporation organized under the laws of Oregon and conducting substantial business in the same.

6.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and § 1400(a).

## GENERAL ALLEGATIONS

### Plaintiff's Professional Career and Recognition

7.    Plaintiff is an internationally recognized sports psychologist and sports performance consultant. For example, Plaintiff has worked as a sports psychologist with over 500 teams, including the Olympic and national teams for the United States, Canada, Australia, Hong Kong, Fiji, Cayman Islands and New Zealand.

8.    Plaintiff has also enjoyed success as an athlete and coach. He is a four-time collegiate All-American swimmer, a holder of numerous world and national masters swim records, and has coached several collegiate, high school, and private swim teams to competitive success.

9.    Plaintiff has been and remains a sought-after speaker at national and international coaching symposia. For example, Plaintiff has been a featured speaker with the American Swim Coaches Association, the North American Soccer Coaches Association, the National Interscholastic Coaches Association Clinic, the Australian Swimming Coaches Association, the Canadian Swimming Coaches Association, the Japanese Masters Swimming Coaches Association, and the British Swim Coaches Association.

10.    In addition, Plaintiff has authored and published ten (10) books and over eighty (80) articles relating to sports psychology and sports performance. He has been a regular columnist for national swimming publications such as Swimmers, Swimmers Coach, SwimSwam, and Swim Texas Magazine, and is a regular contributor to Austin Fit Magazine.

**Plaintiff's Original Literary Work, *Winning Isn't Normal***

11.     Plaintiff is the sole author of the original literary work *Winning Isn't Normal*, which Plaintiff first published in 1982. Plaintiff continues to own all rights in *Winning Isn't Normal*.

12.     Plaintiff holds a copyright registration for *Winning Isn't Normal*. A copyright registration certificate for *Winning Isn't Normal* was issued to Plaintiff by the United States Copyright Office on or about September 21, 1989, with the registration number TX0002672644. A copy of the registration as reflected in the Copyright Office's online catalog is attached as **Exhibit A**.

13.     Since Plaintiff authored and published *Winning Isn't Normal*, he has and continues to promote, distribute, offer for sale, and sell numerous copies of the work. Currently, Plaintiff offers *Winning Isn't Normal* for sale through Amazon.com and the website keelpublications.com.

14.     Plaintiff has made and continues to make meaningful efforts to create a market for *Winning Isn't Normal* and to protect and enjoy the rights afforded to him under the Copyright Act.

15.     For example, Plaintiff creates, markets, and sells derivative works featuring *Winning Isn't Normal*, such as posters and t-shirts that display a portion of *Winning Isn't Normal*. This portion of *Winning Isn't Normal* is viewed by Plaintiff and others as the heart of Plaintiff's literary work. A true and correct copy of this portion of Dr. Bell's work is attached as **Exhibit B.**

16.     This portion of Dr. Bell's work contains the expression "Winning is unusual – as such it requires unusual action." On information and belief, no other published copyrighted work contains this expression.

17.     Plaintiff owns the domain winningisntnormal.com, which points to the keelpublications.com website where Plaintiff offers *Winning Isn't Normal* and derivative works for sale.

3

18.    Due to the popularity of his original work *Winning Isn't Normal*, Plaintiff has been able to increase his international recognition as an authority in sports psychology and sports performance, and has been asked to speak at conferences, symposia, and other engagements as a result.

19.    Plaintiff has offered and continues to offer licenses at fair and reasonable rates to others who wish to publish or otherwise use the popular *Winning Isn't Normal* on the internet or in traditional publishing mediums.

20.    Plaintiff has taken due care to provide notice of his copyright in *Winning Isn't Normal.* Plaintiff has included appropriate copyright notices on physical and electronic copies of *Winning Isn't Normal*, provides appropriate copyright notices on Amazon.com and keelpublications.com, and includes a conspicuous copyright watermark on digital images of derivative works (such as posters) or excerpts that he posts online or otherwise distributes. Plaintiff also includes information on keelpublications.com regarding how to contact Plaintiff about obtaining permission to use *Winning Isn't Normal*.

21.    Because of Plaintiff's commercial efforts, Plaintiff enjoys trademark protection in the word mark "WINNING ISN'T NORMAL," which he uses in connection with goods and services relating to printed matter, including his "Winning Isn't Normal®" series of books of which *Winning Isn't Normal* is part. The United States Patent and Trademark Office issued a trademark registration to Plaintiff for "WINNING ISN'T NORMAL" on November 4, 2014, with a registration number of 4630749.

22.    Pursuant to Section 33(b) of the Lanham Act, registration of the WINNING ISN'T NORMAL® mark is conclusive evidence of the validity of the registered mark and of Plaintiff's

right to use the registered mark in commerce in connection with the goods or services specified in the registration.

23.    As a result of the unique and distinctive nature of Plaintiff's WINNING ISN'T NORMAL® mark and his continued commercial use of the mark, "Winning Isn't Normal" has become widely associated with Plaintiff's printed material and related goods and services. The WINNING ISN'T NORMAL® mark is indicative to consumers that printed material and related items bearing the WINNING ISN'T NORMAL® mark originate from or are affiliated with, sponsored, or approved by Plaintiff.

### Defendant and Its Infringement of Plaintiff's Work

24.    Defendant is a well-known swimming club located in Tualatin Hills, Oregon.

25.    Defendant maintains an active internet presence. It maintains a webpage at www.teamunify.com/Home.jsp?_tabid_=0&team=osthsc ("Defendant's Webpage"), on which it posts information about its organization, events, newsletters, and other matters concerning its operation and activities. Defendant also maintains active Facebook, Instagram, and Twitter accounts.

26.    Defendant's webpage touts that it "is one of the oldest, most successful, and well-respected teams in the Pacific Northwest," and that its "alumni include multiple national, NCAA and international competitors, as well as National Team members and Olympic medalists."

27.    Defendant is a member of USA Swimming, which is the national governing body for competitive swimming in the United States.

28.    Beginning as early as 2007, USA Swimming communicated warnings to its members about the importance of complying with copyright laws and seeking permission from the author of a printed work to use the work, including for works found on the internet.

29. For example, in its October 10, 2014 newsletter sent to all its member teams, USA Swimming included the following:

> IMPORTANT REMINDER: USA Swimming reminds all member organizations and coaches to that you are responsible for complying with applicable copyright laws regarding publication and distribution of printed materials, including internet content. If you have any concerns about whether material you seek to reprint is covered by copyright law, we encourage you to contact the author and obtain permission or otherwise seek appropriate counsel regarding use of the materials.

A copy of the USA Swimming October 10, 2014 newsletter sent to its members is attached as **Exhibit C**.

30. Yet despite receiving prior warnings from USA Swimming regarding the need to comply with copyright laws, Defendant reproduced, displayed and distributed significant portions of *Winning Isn't Normal,* including but not limited to the heart of *Winning Isn't Normal*, in its October 24, 2014 newsletter *The Forecast* ("Infringing Article"). Defendant posted and distributed the Infringing Work on Defendants' Webpage. A copy of the Infringing Article is attached as **Exhibit D**.

31. And despite Plaintiff being well-known within the competitive swimming world as the author of *Winning Isn't Normal*, Defendant did not contact Plaintiff for permission to use *Winning Isn't Normal.*

32. Nor did Defendant provide attribution to Plaintiff for its use of *Winning Isn't Normal*. Rather, Defendant inserted the heart of *Winning Isn't Normal* in the middle of the Infringing Article, a piece titled "Dare to Be Great" that was attributed only to "Christopher."

33. Defendant's placed Plaintiff's work within the Infringing Article to make it appear that Defendant, and not Plaintiff, was the original creator of the copyrighted work that is *Winning Isn't Normal.*

34.     A simple Google search for "Winning Isn't Normal" returns a first page with evidence clearly indicating that Plaintiff is the original author of the significant passage from *Winning Isn't Normal* Defendant posted on his Twitter page, and that the passage is protected under Plaintiff's registered copyright in *Winning Isn't Normal*. A copy of screenshots from a Google search and Google Images for "Winning Isn't Normal," performed January 17, 2017, is attached as **Exhibit E**.

35.     Based on the warnings Defendants received from USA Swimming, the common association between Plaintiff and *Winning Isn't Normal* in the competitive swimming community, and the ease with which can verify Plaintiff is the sole author of *Winning Isn't Normal*, Defendant knowingly disregarded or was willfully blind to plain evidence that Plaintiff was the original author of and copyright holder in *Winning Isn't Normal* when infringing Plaintiff's work.

36.     Defendant also failed to attribute the work to Plaintiff in a fair manner, despite having actual or constructive knowledge that the passage contained in the infringing post was authored by Plaintiff. Instead, Defendant placed Plaintiff's work in the middle of the Infringing Article to give the impression that Defendant, and not Plaintiff, was the original author of the work.

37.     Defendant removed and/or failed to include any copyright notice information in the Infringing Article, despite having actual or constructive knowledge that the work contained in the post was subject to a copyright owned by Plaintiff.

38.     Plaintiff did not discover the Infringing Article until November 15, 2014.

## <u>COUNT I – COPYRIGHT INFRINGEMENT</u>

39.     Plaintiff fully incorporates by reference herein the allegations in Paragraphs 1-38.

40.     Defendant infringed Plaintiff's registered copyright in *Winning Isn't Normal* in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501.

41.     Defendant's act of infringement was willful, in disregard of and with indifference to Plaintiff's rights.

42.     As a direct and proximate result of said infringement by Defendant, Plaintiff is entitled to damages in an amount to be proven at trial.

43.     Plaintiff is also entitled to Defendant's profits attributable to the infringement, pursuant to 17 U.S.C. § 504(b), including an accounting of and constructive trust with respect to such profits.

44.     Plaintiff is further entitled to his attorneys' fees and full costs pursuant to 17 U.S.C. § 505 and otherwise according to law.

45.     Plaintiff is informed and believes that unless enjoined and restrained by this Court, Defendant will again infringe Plaintiff's rights in the Infringed Work, to the irreparable injury of Plaintiff. Plaintiff is also entitled to injunctive relief to enjoin Defendant from further infringement of *Winning Isn't Normal*.

## COUNT II – REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION

46.     Plaintiff fully incorporates by reference herein the allegations in Paragraphs 1-45.

47.     In violation of 17 U.S.C § 1202(b), Defendants knowingly removed copyright management information from Plaintiff's copyrighted work without Plaintiff's permission and/or distributed the unauthorized copies of Plaintiff's work with actual and/or constructive knowledge that authorship and copyright notice information had been removed or altered without Plaintiff's permission.

48.     As a direct and proximate result of Defendants' acts, Plaintiff is entitled to damages in an amount to be proven at trial, pursuant to 17 U.S.C § 1203(c).

## PRAYER FOR RELIEF

Plaintiff prays for judgment against Defendant, individually, jointly, and severally, as follows:

1. For statutory and/or actual damages in such amount as may be found, or as otherwise permitted by law, including enhanced damages based on Defendant's willful and indifferent conduct;

2. For an accounting of and the imposition of constructive trust with respect to Defendant's profits attributable to their infringements of Plaintiff's copyright in *Winning Isn't Normal*;

3. For a permanent injunction pursuant to 17 U.S.C. § 502 prohibiting Defendant, and his respective agents, servants, employees, officers, successors, licensees and assigns, and all persons acting in concert or participation with each or any of them, from infringing Plaintiff's copyright in *Winning Isn't Normal;*

4. For prejudgment interest, according to law.

5. For Plaintiff's attorneys' fees, costs, and disbursements in this action.

6. For such other and further relief as the Court may deem just and proper.

Dated: November 14, 2017

<div style="margin-left:50%">

/s/ Jesse L. London
Jesse L. London, OSB#132730
MOHR IP LAW SOLUTIONS, P.C.
*Of Attorneys for Plaintiff*
Email: jesse@mohriplaw.com
522 SW 5th Avenue, Suite 1390
Portland, OR 97204
Telephone: (503) 336-1214
Facsimile: (866) 387-6875

/s/ JT Morris
(*Pro hac vice admission pending*)
JT Morris, TX Bar No. 24094444
JT MORRIS LAW, PLLC

</div>

*Of Attorneys for Plaintiff*
E-mail: jt@jtmorrislaw.com
610 Brazos Street, Suite 320
Austin, TX  78701
Telephone: (512) 717-5275
Facsimile: (512) 582-2948